IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ORLANDO ALEJANDRO-ORTIZ, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>P.R. ELEC. POWER AUTH., ET AL.,<br><br>Defendants. | CIV. NO.: 10-1320(SCC) |

## OPINION AND ORDER

Orlando Alejandro-Ortiz, along with his wife and their minor children, sued Defendant Puerto Rico Electric Power Authority ("PREPA") for its alleged negligence in causing the injuries he suffered when he came into contact with a low-hanging power line. At trial, PREPA's defense was that it had not acted negligently and, even if it had, its own liability was

precluded by Alejandro's superseding negligence,[1] which it said it could not have foreseen. After a jury trial, a verdict was rendered in favor of Plaintiffs. We now take up PREPA's post-judgment motions, which include a consolidated Rule 50 motion for judgment as a matter of law and Rule 59 motion for a new trial, Docket No. 341, and a Rule 60(b) motion for relief from judgment. Docket No. 347.

## I. PREPA's motion for judgment as a matter of law or for a new trial.

A motion for judgment as a matter of law may be granted if the trial court finds that "a reasonable jury would not have a legally sufficient evidentiary basis" for its verdict. Fed. R. Civ. P. 50(a)(1). In reviewing the motion, we interpret the evidence in the light most favorable to the nonmoving party, and we will grant the motion only if "'the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.'" *Marcano-Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d

---

**1.** Throughout this opinion, we will use the term "superseding cause" to refer to the actions of third persons or outside forces which, by their intervention, prevent a defendant from being held liable for its own negligent actions. *See* RESTATEMENT (SECOND) OF TORTS § 440.

162, 167 (1st Cir. 2005) (quoting *Rivera-Castillo v. Autokirey, Inc.*, 379 F.3d 4, 9 (1st Cir. 2004)); *see also id.* ("A party seeking to overturn a jury verdict faces an uphill battle."); *Crowe v. Bolduc*, 334 F.3d 124, 134 (1st Cir. 2003) (noting that review of motions under Rule 50 is "weighted toward preservation of the jury verdict"). If we deny the motion under Rule 50, we may still grant a motion for a new trial under Rule 59. In reviewing the motion for a new trial, we are free to independently weigh the trial evidence, and we will grant the motion if we feel that the jury's "verdict is against the weight of the evidence." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). Our decision on this question is a matter of substantial discretion. *See Cham v. Station Operators, Inc.*, 685 F.3d 87, 97 (1st Cir. 2012).

Plaintiff Alejandro suffered an accident and sued PREPA for its alleged negligence in causing the incident. His wife and minor children sued for their own injuries related to Alejandro's accident. PREPA's motion under Rules 50(b) and 59 focus on two separate points, which we address separately: first, PREPA argues that there was legally insufficient evidence to support a verdict in favor of Alejandro;[2] second, PREPA

---

**2.**   If this were true, the claims of the other plaintiffs would necessarily fail as well.

argues that the claims of Alejandro's wife, Co-Plaintiff Sonia Rodríguez-Jiménez are time barred.

### A. Is the jury's verdict in favor of Plaintiff Orlando Alejandro-Ortiz supported by legally sufficient evidence?

What is undisputed in this case is the following: Alejandro, at the time of his accident, was employed by the company that was responsible for garbage collection for the area around Cidra, Puerto Rico. Alejandro worked as a "helper," which meant it was his job to ride on the back of the garbage truck as it did its rounds, moving the trash from the street to the truck. One day, his truck encountered a low-hanging cable blocking its path. Employing a method that he had used in the past under similar circumstances, Alejandro climbed on top of the truck, tied a rope to the low-hanging cable, threw the rope's other end over a higher cable, and attempted to hoist the low cable to a height that would make passage possible. Something went wrong, and Alejandro received a very severe shock that caused permanent damage to his hands and arms.

PREPA's legal sufficiency argument casts the trial evidence as supporting—or, rather, requiring—a finding that Alejandro is solely responsible for his accident and injuries. To this end,

PREPA points to evidence showing that Alejandro, by dealing with the low-hanging cable himself, was not following his employer's procedures, as relayed to him through a safety manual and training sessions.[3] In particular, PREPA points to the testimony of Miguel Rodríguez, a former colleague of Alejandro, and Annabelle Hernandez, Alejandro's supervisor, both of whom testified that the proper procedure was to allow a smaller pickup truck to collect the trash on parts of the route that the larger garbage truck could not reach.

PREPA's theory, then, is that Alejandro's own negligence caused his accident. The problem with this theory—and in our opinion it's an insurmountable one—is that the jury *did* find that Alejandro had been negligent, but it found that PREPA had been significantly more so. Indeed, the jury found that PREPA had proved that Alejandro had acted negligently, but in balancing the parties' negligence it assigned 90% responsibil-

---

**3.** The characterization of the facts in this paragraph is PREPA's, which did offer evidence in support of these findings. But Plaintiffs presented contradictory evidence on most of these points, and the jury was entitled to draw its own reasonable factual conclusions. We will not discuss the evidence for these relative positions in detail because of our conclusion below that Alejandro's negligence does not preclude a finding of liability against PREPA.

ity to PREPA and only 10% to Alejandro. *See* Jury Verdict Form, Docket No. 318, at 2. Thus, for PREPA to prevail on its motion, we must find that Alejandro's actions were so abnormal or unforeseeable that PREPA, by exercising the proper degree of care, could not have acted to avoid them. *See Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 50–51 (1st Cir. 1997) (holding that a plaintiff must prove that his injury "was reasonably foreseeable (and, thus, could have been prevented had the defendant acted with due care)" (citing *Coyne v. Taber Partners I*, 53 F.3d 454, 459 (1st Cir. 1995))).

In addressing the foreseeability of Alejandro's injuries, we keep in mind the Supreme Court of Puerto Rico's repeated holding that PREPA is required to "exercise the highest degree of care considering the inherently dangerous character" of its business. *Mendez-Purcell v. Water Res. Auth. of P.R.*, 10 P.R. Offic. Trans. 161, 167 (1980); *see also Martinez-de Jesus v. P.R. Elec. Power Auth.*, 256 F. Supp. 2d 122, 125 (D.P.R. 2003) ("[T]he Supreme Court of Puerto Rico has repeatedly recognized that PREPA, as an entity that produces and distributes electricity, has the duty to exercise the highest degree of care, due to the inherently dangerous nature of the product that it markets."). This duty extends to the installation, maintenance, and

operation of its equipment, and PREPA is "obliged to carry out adequate inspections of its electrical units in order to discover defects and dangerous conditions that could place the public's safety in jeopardy." *Martinez*, 256 F. Supp. 2d at 125 (citing *Ramos v. Autoridad de Fuentes Fluviales de P.R.*, 86 P.R. Dec. 603, 609 (1962)). What this means is that PREPA, as a electrical utility, must foresee more than a typical actor. Moreover, when we speak of foreseeability, it is not required that the defendant have been able to "anticipate the very injury complained of or anticipated that it would have happened in the exact manner in which it did." *In re N-500L Cases*, 517 F. Supp. 825, 833 (D.P.R. 1981) (citing *Gines v. P.R. Aqueduct & Sewer Auth.*, 86 P.R.R. 490, 496–97 (1962)) (emphasis added). Instead, the defendant may be liable for "anything which, after the injury is complete, appears to have been a natural and probable consequence of the [defendant's] act or omission." *Id.* As the Supreme Court of Puerto Rico has held, the "essential factor is to be under a duty to foresee, *in a general way*, consequences of a particular type. It is no defense to allege that the precise course or the full extent of the consequences could not be foreseen, the consequences being of such kind, which in fact happened." *Gines*, 86 P.R.R. at 496 (citing 2 F. HARPER & F.

JAMES, THE LAW OF TORTS 1147 (1956)).[4] And "[a]mong the 'consequences of a particular type' for which a negligent actor is legally responsible are those consequences attributed to reasonably foreseeable intervening forces, including the acts of third parties." *Marshall v. Perez-Arzuaga*, 828 F.2d 845, 848 (1st Cir. 1987) (citing *Widow of Andino v. Autoridad de Fuentes Fluviales de P.R.*, 93 P.R.R. 168, 178 (1966)). *But see id.* ("An 'unforeseen or abnormal' intervention . . . 'breaks the chain of causality,' thus shielding the defendant from liability." (quoting *Widow of Andino*, 93 P.R.R. at 178)).

Here, there was evidence to support a finding that PREPA's electrical cables were low-hanging and poorly maintained.[5] An entity with a duty of care as high as PREPA's must, in cases where it allows its lines to languish in such a fashion, be charged with foreseeing that those lines may come into contact with persons or vehicles. Here, the line was apparently low

---

**4.** We take our translation of the Puerto Rico Supreme Court's opinion in *Gines* from *Marshall v. Perez-Arzuaga*, 828 F.2d 845, 847–48 (1st Cir. 1987).

**5.** Plaintiffs' expert testified on these points at length, and nothing in PREPA's post-judgment motions argues that the jury could not have reached these conclusions.

enough that the truck could not clear it, and Alejandro testified that he felt, despite the fact of the smaller pickup truck, obligated to continue on his route and that it was a common practice to move the lines when they hung low (and he testified, moreover, that he had previously had to move this particular line). We find, therefore, that it is easily foreseeable that PREPA's allowing a cable to hang low enough to block vehicles' passage—even if only large vehicles—could result in individuals attempting to move the cables themselves, and thus continue on their way, *even if such conduct was itself negligent*.

In this conclusion, we are guided by the Puerto Rico Supreme Court's opinion in *Mendez-Purcell*.[6] In that case, the

---

6.  PREPA would rather we look at *Martinez-De Jesus v. P.R. Elec. Power Auth.*, 268 F. Supp. 2d 112 (D.P.R. 2003), but it is no better support for its position. In that case, PREPA asked the court to enter summary judgment in its favor on the grounds that the plaintiff's actions—primarily his coming near electrical cables while on drugs—constituted a superseding cause of his injuries. *See id.* at 114–15. The court denied the motion, noting that there existed questions of fact regarding whether the plaintiff was still under the influence when the accident happened and whether or not he was otherwise acting unreasonably. *See id.* at 115. The court *did not* hold—though PREPA would like us to infer that it would have, *see* Docket No. 341-1 at 14–15—that the plaintiff acting unreasonably would have freed PREPA of liability. To the contrary, the court, after noting that "the issue of

plaintiff, with a friend, was attempting to put a 16-foot alumi-
num mast on his sailboat, which was on a trailer and parked on
a public road. *See Mendez-Purcell*, 10 P.R. Offic. Trans. at 163.
Together, the boat and mast were some twenty feet tall. *See id.*
at 163–64. The plaintiff was performing this operation near the
water authority's high voltage lines, which, at eighteen feet tall,
were at least four feet lower than they should have been. *See id.*
at 163, 166. The finder of fact found that the plaintiff "had
noticed the nearness of the wires and [was] aware of the
danger involved but . . . went on and raised the mast." *Id.* at
164. The trial court determined that the case was one of
concurrent negligence and awarded damages against the water
authority in favor of the plaintiff. *See id.* at 165. The water
authority appealed, arguing essentially that the plaintiff's
actions were a superseding cause and that it should not have
been responsible for any damages. *See id.* The Supreme Court
held otherwise, concluding that, in light of the fact that the
water authority had not maintained its lines at the proper

---

causation is one for the jury," reminded PREPA that Puerto Rico is a
comparative negligence jurisdiction and that under that doctrine the
plaintiff's "alleged negligent behavior would entitle [PREPA] to a
reduction in their liability, but not to a dismissal." *Martinez*, 268 F.
Supp. 2d at 115. Below, we reach much the same conclusion.

height, "[t]here is *no doubt* . . . that the [water authority] should
be held liable for the incident." *Id.* at 166–67 (emphasis added).
It reached this conclusion in spite of the fact that the plaintiff
had appreciated the risk of his own actions[7] and in spite of the
fact that it could not conclude "categorically . . . that the
accident . . . would not have happened had the electric lines
been at the required altitude." *Id.* at 166; *see also id.* ("Nonethe-
less, it can be held that the probability of the accident occurring
would have been less."). It is highly unlikely that the water
authority in *Mendez-Purcell* anticipated that a teenager would
touch its low-hanging lines with his boat's aluminum mast,
and the Court did not hold that it could or should have.
Instead, it implicitly held that the risks of individuals or
vehicles coming into contact with low-hanging lines "in areas
of automobile traffic" was foreseeable. *Id.* at 166. In such a
situation, even the "extreme[] negligence," *id.* at 168, of another
person would not be considered superseding, thus breaking
the chain of causation; the party responsible for the negligent
maintenance of its power lines would be responsible for its

----

**7.** Indeed, the Court held that the plaintiff had been "extremely
negligent." *Mendez-Purcell v. Water Res. Auth. of P.R.*, 10 P.R. Offic.
Trans. 161, 168 (1980).

contributory negligence. *Id.* at 171 (holding that the water authority should be responsible for its contributory negligence, despite the plaintiff's negligence).[8]

We conclude that Alejandro's actions were reasonably foreseeable for an entity with PREPA's duty of care, that his actions therefore did not break the chain of causation, and that the jury was entitled to apportion negligence to PREPA.[9] For

---

**8.** The *Mendez-Purcell* Court held that the proper percentage of responsibility to be assigned to the water authority was 20% (a reduction from the 30% found by the trial court). *Mendez-Purcell*, 10 Offic. Trans. at 171. In the Puerto Rico system, where there is no jury, such a determination by the court is permissible; in the federal system, however, questions such as the apportionment of fault are given to the jury. *See generally Marshall*, 828 F.2d at 848–50 (discussing the apportionment of functions between the judge and the jury in diversity cases arising under Puerto Rico law). Here, the jury apportioned the responsibility and we will not disturb its decision, which we find to have been supported by sufficient evidence, especially because PREPA has argued *only* that Alejandro's own negligence broke the chain of causation, not that the jury's apportionment of fault was unreasonable or unsupportable.

**9.** We note that the jury was instructed that, in order to find PREPA negligent, it was required to find that Alejandro's actions were reasonably foreseeable to PREPA. *See* Jury Instructions, Docket No. 311, at 20. It was also instructed that if it found Alejandro's actions to be unforeseeable and abnormal, it had to find in favor of PREPA on all claims. *See id.* Thus, in reaching its verdict, the jury necessarily found that Alejandro's actions were foreseeable. PREPA's position is

the same reasons, we deny the Rule 59 motion with regard to Alejandro, as we think the jury's verdict was supported by substantial evidence.

### B.   Are the claims of Co-Plaintiff Sonia Rodríguez-Jiménez time barred?

The second prong of PREPA's motion argues that the claims of Alejandro's wife, Co-Plaintiff Sonia Rodríguez-Jiménez, are time-barred.[10] As a general matter, a plaintiff in

---

"tantamount to saying reasonable people could not differ on," *Marshall*, 828 F.2d at 850, the question of whether Alejandro's actions were foreseeable. But the "[e]stimation of the types of risks associated with" this sort of question is "appropriately within the province of the jury." *Id.* Though reasonable people could disagree on the question, we are unwilling to say that the jury's determination was unreasonable. *See id.* at 850–51; *see also Springer v. Seaman*, 821 F.2d 871, 876 (1st Cir. 1987) ("[I]ssues of foreseeability and superseding cause are properly for the jury to decide when there may be reasonable differences in opinion.").

**10.** That this issue arises at all is the result of an odd feature of Commonwealth law. Alejandro's accident occurred on May 6, 2008, and he was hospitalized until December 23, 2008. During this time, Alejandro was covered by the State Insurance Fund ("SIF"), and he could not, therefore, file a suit related to his injuries. Then, on December 1, 2009, almost a year after his hospitalization ended, Alejandro was discharged from the SIF, a fact of which he was notified by a January 22, 2010, letter. But even then, Alejandro could not sue until a ninety-day administrative review period expired, which it did on April 16, 2010, on which date this suit was filed. Because Rodríguez's claims are derivative of Alejandro's, it is at first glance

Puerto Rico may not bring suit more than a year after she acquires knowledge of her injury and its author. *See Torres v. E.I. Dupont de Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000). Here, because Rodríguez's injury occurred more than a year before she filed suit, *see supra* note 10, she "bears the burden of proving that she lacked the requisite knowledge at the requisite times." *Torres*, 219 F.3d at 19. Rodríguez argues that she was diligent in prosecuting her claim and that this should excuse her late filing.

In its seminal statute of limitations opinion, *Colon-Prieto v. Geigel*, the Puerto Rico Supreme Court grounded the limitations rule in principles of justice: on the one hand, it "safeguard[s] a right," and on the other it "give[s] a definite character to the uncertainty of a possible claim." *Colon-Prieto*, 15 P.R. Offic. Trans. 313, 326 (1984). At its core, the limitations rule is based on a concern about abandonment of claims, and

---

logical that they would have been filed together on April 16, 2010, as they indeed were. However, Commonwealth law provides that in this situation, although the injured person *must* wait, his family members who bring derivative claims *cannot. El Dia, Inc. v. Tribunal Superior*, 4 P.R. Offic. Trans. 207, 210–11 (1975). Thus, without a showing by Rodríguez that the statute of limitations was otherwise tolled, her suit should have been brought by May 6, 2009.

it creates a "legal presumption of abandonment" when a plaintiff lets a year pass without filing suit. *Id.* Recognizing the rule as a balancing of competing interests, the Court rejected "a literal and narrow reading" of the knowledge requirement. *Id.* at 327. It recognized that "the right-holder's ignorance of whether or not a cause of action, derived from an unlawful act, has accrued, is a pertinent and determining factor." *Id.* at 328. At issue in *Colon-Prieto* was a plaintiff whose injury was allegedly caused by his physician's botched surgery. *See id.* at 329. But that same doctor had reassured the plaintiff that his pain was caused by something else, and in doing so the doctor hid his own negligence. *See id.* It was not until the plaintiff visited another doctor that he learned the real reason for his pain, and it was not until this date, the Court held, that his cause of action accrued. *Id.* To explain this holding, the Court, quoting a treatise, said that "the action does not accrue when the injury to the right takes place in circumstances that allows the inference that there was a clandestine or hidden fact of which the holder of the right, acting with the degree of diligence required by law, has no knowledge." *Id.* at 330 (quoting J. PUIG BRUTAU, FUNDAMENTOS DE DERECHO CIVIL 876–77 (1979)).

In *Villarini-Garcia*, the First Circuit faced a set of facts similar to those in *Colon-Prieto*. There, the defendant operated on the plaintiff and, during the operation, removed a piece of muscle from the plaintiff's back. *See Villarini-Garcia v. Hosp. de Maestro, Inc.*, 8 F.3d 81, 83 (1st Cir. 1993). After the surgery, the plaintiff experienced severe back pain, but the defendant doctor assured her that the procedure had gone normally and that the pain would subside eventually without further treatment. *See id.* But the plaintiff's pain continued and, indeed, worsened and expanded, and she visited another doctor. *See id.* Mentioning the previous surgery, the new doctor speculated that it might be the cause of her pain, but the new doctor, when asked whether he thought plaintiff should sue the defendant doctor, discouraged that course and ultimately concluded that there was no relationship between the pain and the surgery. *See id.* She saw more doctors and received more diagnoses before one doctor finally told her, almost three years after her surgery, that the pain resulted from the back surgery. *See id.* at 84. The plaintiff brought suit just under a year after that last doctor's visit. *See id.* The First Circuit, noting that the "one-year period does not begin to run until the plaintiff possesses, *or with due diligence would possess*, information sufficient to permit

suit," *id.* at 84 (emphasis added), held that summary judgment on plaintiff's negligence claim was improper because "a reasonable factfinder, while not necessarily compelled to do so, could find that [the plaintiff] did exercise due diligence . . . but did not obtain the necessary knowledge until" the date of the final doctor's visit. *Id.* at 86. In part, this holding was based on the defendant doctor's assurances. *See id.* at 85–86 ("[The plaintiff] was promptly assured by . . . the very doctor who had performed the operation that . . . the pain was normal and would eventually end. . . . [S]he was entitled *initially* to rely on this prognosis from her doctor." (emphasis added)). But the Circuit also acknowledged her reliance on the assurances of other, non-party physicians who, though they knew of the surgery, did not link it to her injury. *See id.* at 86 & n.2 (noting that the relevance of the other doctors' diagnoses to a finding of diligence was a jury question).

The First Circuit examined *Colon-Prieto* in even greater depth in *Rodriguez-Suris v. Montesinos*, 123 F.3d 10 (1st Cir. 1997). Surveying the caselaw, the Circuit interpreted *Colon-Prieto*'s requirement that a plaintiff have "knowledge of the author of the injury" to mean that if "a plaintiff is not aware of some level of reasonable likelihood of legal liability on the part

of the person or entity that caused the injury, the statute of limitation will be tolled." *Id.* at 13–14. And with regard to *Colon-Prieto*'s discussion of abandonment, the Circuit noted that "in order for this legal reasoning to apply . . . such abandonment on the part of the plaintiff should really exist." *Id.* at 14 (internal quotations and brackets omitted).

The *Rodriguez-Suris* court determined that there were two logically distinct components to determining whether "a plaintiff can be said to have, or to lack, the requisite level of awareness for statute of limitations purposes."[11] *Id.* at 14. The first component is subjective: did the plaintiff *actually* have sufficient knowledge to bring suit. *See id.* at 15 ("[A] plaintiff who is not aware of the existence of a cause of action is essentially incapable of bringing suit within the limitation period."). The second component is objective, and it asks whether the plaintiff, "aware of facts sufficient to put her on

---

**11.** The *Rodriguez-Suris* court actually divided the question of awareness into three components, but because one is essentially an exception to the general rule, we do not treat it as a component of the basic inquiry. *See Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir. 1997) (suggesting that the third component to the knowledge inquiry involves asking whether the plaintiff's failure of diligence is a result of the defendant's own assurances).

notice that she has a potential tort claim," in fact "pursue[d] the claim with reasonable diligence." *Id.* at 15–16. This component recognizes that where a plaintiff's lack of knowledge is a result of her own "negligence or lack of care, then the statute of limitations would not be tolled." *Id.* at 15. As an example, the *Rodriguez-Suris* court discussed a portion of the *Villarini-Garcia* case that we did not address above. Specifically, the *Villarini-Garcia* plaintiff sued the doctor for removing muscle tissue without her consent. *See Villarini-Garcia*, 8 F.3d at 85. The Circuit noted that she knew of this removal within weeks of the surgery, and this fact was sufficient to put her on notice that she should "resort to a lawyer on the lack of consent claim[; if] the lawyer judged that the consent was deficient, she had to bring suit within one year." *Id.* The *Rodriguez-Suris* court interpreted this in light of its objective requirement, noting that while "the plaintiff may not have understood fully the legal significance of the facts known to her after her operation, . . . there is nothing unfair in a policy that insists that the plaintiff promptly assert her rights." *Rodriguez-Suris*, 123 F.3d at 16 (internal quotations omitted). The *Villarini-Garcia* plaintiff, then, was barred from filing her suit more than a year after she received notice of her injury because of her "failure to consult

with a lawyer or otherwise investigate the claim" after she learned that the muscle tissue had been removed. *Id.* Finally, the *Rodriguez-Suris* court held that where "a plaintiff's suspicions that she may have been the victim of a tort are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue her claim more aggressively." *Id.*

Here, Rodríguez's contention is that after she learned of her husband's accident she promptly went, on her pastor's advice, to see an attorney—who told her that she had no case. She then let the matter drop until she was contacted by the attorneys who now represent her. We believe that if Rodríguez put forth sufficient evidence of these facts,[12] a jury could permissibly decide that she had acted with reasonable diligence in pursuing her claims; therefore, they would not be time barred. The *Colon-Prieto* Court made clear that the limitations rule is grounded in fairness. Most basically, it is a rule meant to punish abandonment of claims. *See Colon-Prieto*, 15 P.R. Offic. Trans. at 326 (noting that the rule creates a "legal presumption of abandonment"). But the courts have also noted that this

---

**12.** PREPA argues that she has not, and we discuss that matter below.

abandonment should in fact exist. *Rodriguez-Suris*, 123 F.3d at 14 ("[A]bandonment on the part of the plaintiff should really exist."). To this end, *Colon-Prieto*'s requirement that the plaintiff know the "author" of her injury has been interpreted, since that initial decision, to mean that a plaintiff needs to know more than the simple fact of probable causation—she should also have some knowledge of the potential for the author's legal liability. *See id.* at 13–14 ("If a plaintiff is not aware of some level of reasonable *likelihood of legal liability* on the part of the person or entity that caused the injury, the statute of limitation will be tolled." (emphasis added)); *Villarini-Garcia*, 8 F.3d at 84 (The limitations period "does not begin to run until the plaintiff possesses, or with due diligence would possess, information *sufficient to permit suit*." (emphasis added)); *Colon-Prieto*, 15 P.R. Offic. Trans. at 328 (The plaintiff's "ignorance of *whether or not a cause of action . . . has accrued . . .* is a pertinent and determining factor." (emphasis added)). The *Rodriguez-Suris* court divided this knowledge inquiry into two parts. First, we ask whether Rodríguez had actual knowledge of "the likelihood of legal liability," *Rodriguez-Suris*, 123 F.3d at 13–14, on the part of PREPA. Rodríguez's position is that she did not know of PREPA's liability—to the contrary, she believed it not

to be liable—and thus her claim survives the test's subjective component. Second, we ask whether Rodríguez "pursue[d her] claim with reasonable diligence." *Id.* at 15–16. With regard to this element, Rodríguez says that after finding out about her husband's injury, she visited a lawyer, but left believing she had no recourse. By going to a lawyer, she did precisely what the *Villarini-Garcia* plaintiff was faulted for having not done. There, the court held that because the plaintiff knew about the facts that gave rise to her claims, she was sufficiently on notice of her duty to investigate. *See Villarini-Garcia*, 8 F.3d at 85. The court held that her decision not to go to a lawyer or otherwise investigate was unreasonable; the limitations period was not tolled because she had not been sufficiently diligent. *Id.* Rodríguez, by contrast, went promptly to a lawyer, as *Villarini-Garcia* suggests that she should have. At that point, however, she was given apparently-mistaken advice, and she put her claim aside. We conclude that a jury could have found her decision to rely on this third-party attorney to be the actions of a reasonably diligent plaintiff. *Cf. id.* at 86 & n.2 (acknowledging a plaintiff's reliance on the mistaken opinion of a third-party physician and suggesting that the relevance of that diagnosis to a finding of diligence was a jury question); *see also*

*Villarini-Garcia v. Hosp. de Maestro, Inc.*, 8 F.3d 81, 85 (1st Cir. 1993) (holding that plaintiff should have consulted an attorney, but predicating her subsequent duty to file suit on the attorney's "judg[ment]" that she had a case). Asked whether Rodríguez "exercised reasonable diligence in prosecuting her claims against" PREPA, the jury in this case answered that she did. *See* Docket No. 318, at 3. Nothing about Rodríguez's theory leads us to conclude that the question ought not to have been given to the jury.

The question remains, however, whether the evidence presented at trial in fact supported the jury's verdict. PREPA contends that the jury's verdict was based on impermissible hearsay, not admissible evidence. Rodríguez's testimony on this point was brief. First, she testified, without objection from PREPA, that after the accident she, on the advice of her pastor, went to see a lawyer named Pedro Cruz in Cayey, Puerto Rico. Plaintiffs' counsel then asked what Atty. Cruz told Rodríguez, and the following exchange took place:

> Q. What did Attorney Cruz tell you?
> [D.'s Counsel]:   Objection, Your Honor. Hearsay.
> [P.'s Counsel]:   What did—I'll rephrase it.
> Q. After your conference with Mr. Cruz, what information did you give him?

A.  That—

Q.  What did—let me rephrase it. Go ahead.

[D.'s Counsel]:    Your Honor, we renew our objection.

[. . . .]

[D.'s Counsel]:    She just stated as to what somebody else who's not in Court right now, who's never been supplied—

The Court:    Mmhmm. I noticed that.

[P.'s Counsel]:    I'm going to rephrase it.

The Court:    Ms. Rodríguez, tell us what you did as a result of what the attorney told you.

The Witness: I did not understand that part.

The Court:    Okay. After that visit, did you do anything else?

The Witness: No.

Q.  Now, what did you understand that lawyer to say regarding your cause of action?

A.  Like what?

Q.  What did you hear him tell you?

[D.'s Counsel]:    Objection. Hearsay.

Q.  What was your—what was your impression, your understanding of what transpired with that meeting with the lawyer?

A.  Well, that I did not have a case.

Q.  Okay. So, what happened after that?

A.  Well, I left it at that with time.

PREPA's primary complaint about this exchange concerns

testimony given by Rodríguez in the Spanish language in
response to the question: "After your conference with Mr.
Cruz, what information did you give him?" PREPA immedi-
ately objected to that question, and the interpreter never
translated Rodríguez's response, but she did partially answer
in Spanish. PREPA says that because the jury spoke Spanish,
they all would have heard and been influenced by this testi-
mony. We think not. Juries are regularly instructed to disre-
gard certain bits of inadmissible evidence, and we take for
granted their ability to do so. In this case, the jurors were told
that only the official translations of Spanish-language testi-
mony constituted valid evidence, and we have no reason to
believe that they acted contrary to that instruction. Moreover,
the hearsay would not have prejudiced PREPA because the
information it sought to convey—that Rodríguez met with an
attorney and was convinced she had no case—was subse-
quently elicited through a proper question (to which PREPA
did not object) and non-hearsay testimony.

   We conclude that sufficient evidence was in fact adduced
to support the jury's conclusion that Rodríguez acted dili-
gently. Her unobjected-to testimony showed the following:
that she went to see a lawyer soon after her husband's injury,

on the advice of her pastor; that after she saw this lawyer, she understood that she had no case; and that she took no further action after that point until she was contacted by the attorneys who came to represent her. As we explain above, we think that this is sufficient to support a finding of reasonable diligence, though such a result is certainly not compelled. We therefore deny PREPA's Rule 50(b) motion as to Co-Plaintiff Sonia Rodríguez.[13]

## II.  PREPA's Motion for Relief from Judgment

PREPA also has filed a Rule 60(b) motion seeking relief from the judgment entered against it. *See* Docket No. 347. The motion raises two questions,[14] one simple and one difficult.

---

**13.** PREPA argues that if we deny its Rule 50(b) motion as to Rodríguez we should grant a Rule 59 motion for a new trial on the grounds that it was unfairly surprised by her testimony as to her diligence. We deny that motion as well. PREPA raised its statute of limitations argument in its answer, and it had plenty of time to investigate that defense. More crucially, PREPA deposed Rodríguez and could have questioned her on this subject. That they did not do so, and were therefore surprised by her testimony, does not make that predictable surprise unfair. Likewise, and for the reasons explained above, we deny PREPA's Rule 59 motion on weight of the evidence and hearsay grounds.

**14.** PREPA's motion also makes arguments about Plaintiffs' entitlement to attorneys' fees in this case. But because we have not yet entered a judgment regarding fees, we will reserve consideration of this portion

Below, we take up those questions in turn, partially grant PREPA's motion, and enter an order amending judgment in this case.

### A.  The insurance settlement caps PREPA's damages.

Judgment was entered against PREPA in the total amount of $3,465,000.00. Docket No. 323. PREPA, however, argues that its liability is capped at $1,000,000 based on a settlement agreement signed by Plaintiffs and PREPA's insurer. The facts, as laid out in that agreement, *see* Docket No. 348-1, are that PREPA has a $1,000,000 self-insurance fund as well as a $10,000,000 liability insurance policy issued by Chartis Insurance Co. According to the agreement, in exchange for a payment from Chartis, the settling plaintiffs agreed to hold PREPA harmless for any jury damages in excess $1,000,000. *See id.* at 3 ("Plaintiffs are well aware and the Parties agree and stipulate, that should Plaintiffs prevail in the pending federal court case against PREPA, they shall and will not collect any amount payable as damages in excess of PREPA's self-insured retention in the amount of ONE MILLION DOLLARS.").

We agree with PREPA that the settlement agreement bars

_____

of PREPA's motion.

the plaintiffs covered by the agreement from collecting any money in excess of $1,000,000 in this case. The more difficult question, however, concerns precisely which of the plaintiffs are covered by the agreement. We consider that question below.

**B.  Who is covered by the settlement agreement?**

PREPA's position is that the settlement agreement limits the recovery of all of this case's plaintiffs. Plaintiffs argue, however, that Rodríguez's claims are not covered by the settlement agreement. In support of their position, Plaintiffs point out that the agreement's first paragraph reads as follows:

> This Confidential Settlement Agreement and Partial Release of All Claims (the "Settlement Agreement") is made and entered into . . . by and between Orlando Alejandro Ortiz . . . , on his own behalf, and his wife, Sonia Rodriguez Jimenez, . . . in representation of their minor children . . . hereinafter referred to as [Settling] Plaintiffs, and [Chartis] in its capacity as the insurer of codefendant [PREPA].

Docket No. 348-1, at 1–2. This definition of Settling Plaintiffs[15]

---

**15.** The agreement itself refers to this group as, simply, "Plaintiffs," but because there is some difference between this class and what we have throughout this opinion referred to by this term, we will refer to what the agreement calls "Plaintiffs" as "Settling Plaintiffs."

covers the claims of Alejandro and his children, but it point-
edly does *not* include the claims of Sonia Rodríguez *on her own
behalf*. Later, the agreement purports "to settle [Settling]
Plaintiffs [sic] claims and any and all liability of [Chartis] and
its Insured . . . in excess of PREPA's self-insured retention in
the amount of" $1,000,000. *Id.* at 2–3. And it is the Settling
Plaintiffs who "agree and stipulate that should [they] prevail
in [this case], they shall and will not collect any amount
payable as damages in excess of" $1,000,000. *Id.* at 3. We agree
with Plaintiffs that this language explicitly excludes Rodríguez
from the settlement agreement.[16]

PREPA says that even if Rodríguez is not part of the class
of Settling Plaintiffs, PREPA's liability is nonetheless limited by
other language in the agreement, specifically the following:

> [T]he [Settling] Plaintiffs shall indemnify and hold
> harmless [Chartis] and its Insured . . . from any and all
> claims, damages, losses and expenses, including but not
> limited to attorney [sic] fees, arising out of any claims
> filed by [Settling] Plaintiffs (be it a blood family relation
> or an affinity relation), or on their behalf, related to the
> incident which is the subject of [this case].

─────────────────

**16.** We note, too, that by the settlement agreement's terms, Chartis only
made payments in favor of Alejandro and his minor children.

*Id.* at 5–6. According to PREPA, something in this paragraph "explicitly releases PREPA from any liability in excess of $1,000,000 arising out of any claim by Mrs. Rodríguez for the facts that gave rise to this lawsuit."[17] Docket No. 347-1, at 8. Put simply, we don't see what PREPA sees. Ignoring for a moment the paragraph's parenthetical, the language merely states that the Settling Plaintiffs "shall indemnify" Chartis and PREPA for "any claims filed by [Settling] Plaintiffs . . . , or on their behalf." Docket No. 348-1, at 5–6. The relevant claims of Rodríguez are not those of the Settling Plaintiffs, nor are they on the Settling Plaintiffs' behalf, because Rodríguez is not a Settling Plaintiff. We assume, then, that the language that "explicitly releases" PREPA from liability for Rodríguez's claims is the parenthetical. But this argument fails because the parenthetical phrase is nonsensical. It refers to

> claims filed by [Settling] Plaintiffs (*be it a blood family relation or any affinity relation*), or on their behalf . . . .

Docket No. 348-1, at 5 (emphasis added). The apparent referent for the word "it" in the parenthetical is "Settling Plaintiffs," but

---

**17.** PREPA's argument is conclusory; it makes no attempt to interpret the passage's meaning. As we explain, we can find no basis in the paragraph's language for PREPA's conclusion.

this makes little sense: first because "it" is singular and
"Settling Plaintiffs" is plural; and second, and more impor-
tantly, because "Settling Plaintiffs" is an internally-defined
term that does not refer to—and neither can it be coherently
limited by reference to—relatives.[18] Being unable to under-
stand the phrase—and being offered no reasonable interpreta-
tion of it by PREPA or Chartis[19]—we have no choice but to
treat it as a nullity. We hold, therefore, that Settling Plaintiffs'
indemnification of PREPA and Chartis under the settlement
agreement is only for claims filed by the Settling Plaintiffs or
on their behalf.

Finally, Chartis and PREPA seek to get out from under the
agreement's plain language by offering as an explanation for
Rodríguez's absence their belief that her claims were time

---

**18.** That is, it would make no sense to say that a Settling Plaintiff is, for
example, an affinity relation.

**19.** PREPA was not a party to the agreement between Chartis and the
Settling Plaintiffs, but Chartis's own attempt at explaining this
language is no more helpful—and no less conclusory—than is
PREPA's. *See* Docket No. 352, at 4 (quoting the agreement's language
and stating, without explanation, that Rodríguez's claims "[c]learly . . .
fall within the scope of" the indemnity language). And though we
certainly agree with Chartis that indemnity clauses are enforceable, the
contract's plain language simply doesn't apply to Rodríguez's claims.

barred. Chartis writes that "the undisputable fact is that there is no settlement payment assigned to Sonia Rodriguez as part of the settlement . . . because it was [Chartis's] position that her claims were time-barred, a position that was accepted by [Rodríguez's counsel] for purposes of the settlement." Docket No. 352, at 3. PREPA goes even further, suggesting that Rodríguez's absence from the agreement supports its arguments that Rodríguez's claims were *in fact* time barred: "The fact that Mrs. Rodriguez was not part of the Settlement Agreement only supports PREPA's argument that her lawyers knew her claims were time-barred." Docket No. 347-1, at 8 n.1. We are not inclined to delve into this debate, however, because we find that no permissible reading of the agreement's language would cover Rodríguez's claims.[20] *See Exec. Leasing Corp. v. Banco Popular de P.R.,* 48 F.3d 66, 69 (1st Cir. 1995) (holding that under Puerto Rico law, extrinsic evidence of intent may be resorted to only after a finding of ambiguity).

---

**20.** Nonetheless, we note that at the time the settlement agreement was signed, Rodríguez's claims were indisputably live. Chartis's position on Rodríguez's claims explains why it didn't offer a settlement on her behalf; it does not explain why the agreement ignores Rodríguez's claims entirely, and it certainly does not make the contract apply more broadly than its express language allows.

We are likewise unconvinced by Chartis's argument that because Plaintiffs' motion to voluntarily dismiss Chartis applied to *all* Plaintiffs, rather than just the Settling Plaintiffs, that the agreement must also have applied to all Plaintiffs or that PREPA's liability is somehow limited by the dismissal. *See* Docket No. 352, at 5–6. It is true that the voluntary dismissal with regard to Chartis applied to *all* Plaintiffs, not just the Settling ones, but it is unclear to us why this should alter our reading of the settlement agreement's plain language, which, again, never mentions Rodríguez's personal claims. Moreover, Rodríguez dismissing her claims against Chartis means only that she is precluded from enforcing her judgment directly against PREPA's insurer: it does not mean she cannot enforce the judgment's entirety against PREPA itself, and it certainly says nothing about the judgment's amount.[21]

For all of these reasons, we deny PREPA's Rule 60(b) motion as to the claims of Rodríguez, which we find to be

---

**21.** To be sure, we are confused by the discrepancy between the agreement's language and the dismissal's. It seems certain that confusion existed among the parties' attorneys about exactly what was happening, but this is precisely why we think it important to rely on the agreement's express language, which unambiguously resolves the question before us.

separate and apart from the claims of the Settling Defendants and, therefore, not limited to being recoverable from PREPA's $1,000,000 self-insurance fund.

### C. Correcting the judgment.

As we explain above, we grant the Rule 60(b) motion with regard to the claims of Alejandro and his children, but we deny it with regard to the claims of Rodríguez. It become necessary, then, to amend the judgment originally entered in this case.

After trial, judgment was entered against PREPA as follows:

1. Orlando Alejandro-Ortiz:  $2,025,000.

2. Sonia Rodríguez-Jiménez:  $855,000.

3. Minor Jan Anthony:         $292,500.

4. Minor Bryan:               $292,500.

Based on analysis above, the judgment in favor of Alejandro and his minor sons cannot exceed $1,000,000. Together, the final judgment in the favor of Orlando and his sons equalled $2,610,000. Alejandro's personal award constituted 77.6% of the collective total; the sons' awards each constituted 11.2%. Awarding them the same percentages of $1,000,000, they are due:

1. Orlando Alejandro-Ortiz:  $776,000.

   2.  Minor Jan Anthony:     $112,000.

   3.  Minor Bryan:          $112,000.

Rodríguez's award will not be reduced.[22] Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of November, 2012.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE

---

**22.** The stay previously entered on Plaintiffs' motion to execute judgment, Docket No. 337, is hereby lifted.