IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ORLANDO ALEJANDRO-ORTÍZ, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> P.R. ELEC. POWER AUTH., <br><br> Defendant. | CIV. NO.: 10-1320(SCC) |

**OPINION AND ORDER**

  Because of a dispute over who represented Plaintiffs in this case, this Court, on October 23, 2013, ordered Defendant PREPA to deposit in the Court's registry the $1,000,000 that it owed to Plaintiffs, so that the funds could be disbursed as ordered by the Court. *See* Docket No. 444, at 20. In light of that Order Putative Intervenor LFR Collections, LLC ("LFR"), filed a motion to intervene, arguing that it was a judgment creditor of Plaintiffs' law firm, Matthews & Fullmer, and entitled to the fees destined for that firm. Docket No. 454. The motion was

opposed by Matthews & Fullmer, Docket No. 460, and the Court ordered supplementary briefing, *see* Docket Nos. 477, 479, 480. Now, after reviewing the parties' filings, I grant LFR's motion.

## I. Background

Plaintiffs in this case are represented by Toby B. Fullmer of the Matthews & Fullmer Law Firm ("Matthews & Fullmer"). Fullmer's co-principal at Matthews & Fullmer is W. Douglas Matthews, who is also the sole proprietor of an entity called the Matthews Law Firm.[1] In 2007, the Matthews Law Firm secured a revolving line of credit the terms of which it eventually seems to have breached. In any event, LFR obtained a New York State judgment against Matthews and the Matthews Law Firm on June 1, 2012, in the amount of $2,550,863.76. *See* Docket No. 454-2.[2] On July 13, 2012, LFR petitioned to domesticate the

---

1. On September 8, 2009, Plaintiffs signed a contract with Matthews & Fullmer. *See* Docket No. 480-1. This is also the firm listed on both attorneys' applications to appear *pro hac vice*. *See* Docket Nos. 4, 5. However, CM/ECF lists both attorneys as being associated with the Matthews Law Firm, and both have email addresses on file that use a Matthews Law Firm domain name.

2. Matthews & Fullmer has opposed LFR's motion in part by arguing that the status of the New York judgment was in question because of a pending appeal. However, the judgment was affirmed on appeal, and

| ALEJANDRO-ORTIZ v. PREPA | Page 3 |
|---|---:|

New York judgment in Texas, where the law firms in question are organized. Subsequently, on July 31, 2012, Matthews & Fullmer was incorporated in Texas. *See* Docket No. 454-5.

In August 2012, after what LFR says were unsuccessful attempts to execute its judgment in New York and Texas, LFR obtained a writ of attachment from the San Juan Court of First Instance. In March 2013, it also domesticated the New York judgment in Puerto Rico court. LFR then served its writs of attachment on the defendants in various cases that the Matthews Law Firm and Matthews & Fullmer were prosecuting in this District, including PREPA in this case. However, this Court's October 23, 2013, Order rendered ineffectual the writ of attachment because it required that PREPA pay all of the judgment funds into the Court's registry. It is for this reason that LFR says it filed the present motion to intervene.

## II. Analysis

LFR seeks intervention as of right under Federal Rule of Procedure 24(a)(2). To succeed, LFR must establish: (1) that its motion is timely; (2) that it has an interest in the property that

---

the New York Court of Appeals denied a petition for review. *See* Docket No. 483-1. As such, the judgment is final and subject to no further appeals.

forms the basis for this suit; (3) "a realistic threat that the disposition of the action will impede its ability to protect its interest"; and (4) "the lack of adequate representation of its position by any existing party." *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). Matthews & Fullmer argues that LFR has failed to satisfy all but the second factor.

The parties dispute whether LFR's motion, which was filed more than a year after it obtained the New York judgment, is timely. In light of this apparent delay and the First Circuit's recent decision in *In re Efron*, 746 F.3d 30 (1st Cir. 2014), I ordered the parties to provide supplemental briefing on the issue of timeliness. After reviewing those briefs, I find the motion timely. In assessing the timeliness of a motion to intervene, "the most important factor is the length of time that the putative intervenor knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention." *Id.* at 35. In *Efron*, the putative intervenor waited more than 19 months after the time that he should have known his interest was in jeopardy before seeking to intervene. *See id.* at 36. The putative intervenor sought to justify this delay by pointing to his belief that the case was meritless, a belief of

which he was disabused only when it became apparent that the case might settle in a manner unfavorable to his interests. *See id.* The Circuit rejected this excuse, reasoning that parties "'having knowledge of the pendency of litigation which may affect their interests sit idle at their peril.'" *Id.* (quoting *Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7 (1st Cir. 1990)).

Though Matthews & Fullmer try to draw parallels between *Efron*'s facts and those of this case, I do not believe that LFR's delay in filing the motion to intervene is of the same character. LFR—unlike the putative intervenor in *Efron*—did not sit on its hands; to the contrary, it domesticated the New York judgment, sought a writ of attachment in Puerto Rico court, and served that writ on PREPA, the defendant in this case. Quite reasonably, LFR assumed that judgment in favor of Plaintiffs would result, ultimately, in a judgment requiring PREPA to pay attorneys' fees to Matthew & Fullmer. LFR seems to have believed that the writ of attachment would have sufficed to secure its possession of those fees. However, when this Court ordered PREPA to place those funds in the Court's registry, the writ of attachment was rendered ineffectual. At that point, LFR's interests were once again jeopardized; and at that point,

| ALEJANDRO-ORTIZ v. PREPA | Page 6 |
|---|---|

LFR quickly filed the motion to intervene. I therefore find that because the motion was filed soon after the writ of attachment was rendered ineffectual, the motion to intervene is timely.[3]

I next consider whether LFR's interests will be impaired if it is not permitted to intervene. Boiled down, Matthews & Fullmer's argument on this point is that because LFR has been able to pursue remedies in various courts—including the garnishment order served on PREPA—LFR cannot argue that

---

**3.** Matthews & Fullmer argues that because the writ named only Matthews and the Matthews Law Firm, and because PREPA could not perform the particularized disbursement to the various beneficiaries of the judgment, the writ was "obviously ineffective" to protect LFR's interest, and so LFR cannot rely on its filing in proving that it timely filed its motion to intervene. Docket No. 480, at 3–4. I will not engage in a speculative analysis about whether LFR would have prevailed under the writ. The likelihood is that litigation would have ensued one way or the other, and in either case LFR would bring its arguments that Matthews & Fullmer is obligated to pay the Matthews Law Firm's debts. I find that LFR did not sit on its hands in protecting its rights. Furthermore, because litigation on this subject was likely inevitable—and could not begin until Plaintiffs were permitted to execute against PREPA—I find that Matthews & Fullmer suffered no prejudice from LFR's delay. *See Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 64–65 (1st Cir. 2008) (considering "the foreseeable prejudice to the existing parties if intervention is granted"); *see also Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992) ("As a general rule, prejudice to existing parties is less likely in a case where post-judgment intervention does not seek to disturb the core judgment, but merely to reconfigure an ancillary term.").

its interests have been impaired. This ignores the fact that LFR's collection efforts, though thorough, have been unsuccessful. Its garnishment order, for instance, has been rendered ineffective by this Court, and its worry is that if the money is disbursed to Matthews & Fullmer, it will be placed outside of LFR's reach. Matthews & Fullmer also make the confusing argument—without citing to any caselaw—that because the funds at issue would not fully satisfy the debt to LFR, LFR's interest will not be protected by intervening. But LFR has an obvious interest in any funds that might satisfy even part of its judgment. I find, therefore, that without intervention LFR's interests will be impaired. *Cf. Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) (holding that intervention is proper where the putative intervenor has an interest in funds that the court will distribute); *see also Daggett v. Comm'n on Governmental Ethics & Elec. Practices*, 172 F.3d 104, 110 (1st Cir. 1999).

LFR argues that its interests are not sufficiently protected by any current parties to this litigation because none "have a stake in seeing that the proceeds are applied to satisfy LFR's judgment." Docket No. 454, at 9. Matthews & Fullmer dispute this on the grounds that it "intend[s] to make a payment to

LFR in accordance with the garnishment order." Docket No. 460, at 10. This argument is misleading, however, because while LFR claims an interest in *all* of the attorneys' fees to which Matthews & Fullmer is entitled, Matthews & Fullmer intends to pay only 25% of those fees to LFR.[4] *See* Docket No. 459, at 4. It is plain, then, that LFR's interests are not being protected by Matthews & Fullmer. *See Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (holding that a putative intervenor's interests are not protected when they are not coextensive with the interests of another party to the litigation and are adverse to some party's interests).

For the foregoing reasons, intervention is proper, and LFR's motion is accordingly GRANTED.[5] The more difficult problem

---

4. Matthews & Fullmer argues that the fees awarded to Matthews and the Matthews Law Firm in this case are wages or commission, and therefore that LFR cannot garnish them at a rate greater than 25%. *See* Docket No. 459, at 4–5 (citing the Consumer Credit Protection Act ("the CCPA"), 15 U.S.C. § 1673(a)). But in the same motion, Matthews & Fullmer correctly asks for disbursement to it, not to Matthews or the Matthews Law Firm. *See id.* at 4. Whatever the legal status of an eventual payment to Matthews, the distribution to Matthews & Fullmer is likely business revenue, not wages, and therefore not subject to the CCPA's garnishment limit.

5. Matthews & Fullmer argues that special circumstances—specifically, the fact that LFR is seeking post-judgment intervention—militates

is what to do next. Implicitly, LFR's filings request not just intervention but relief as well: it wants possession of the entirety of Matthews & Fullmer's attorneys' fees. In this regard, LFR's case is not without its strengths. One question that I requested supplemental briefing on was why, if LFR is a creditor of Matthews and the Matthews Law Firm, should it be able to seize the assets of an apparently different entity, Matthews & Fullmer. LFR's answer to this question makes a compelling case.

The Matthews Law Firm appears to have entered into a Security Agreement and Credit Agreement in 2007. *See* Docket No. 479-2, at 2–23. The Security Agreement bound the Matthews Law Firm's successors, and it explicitly required that

---

against granting LFR's motion. *See* Docket No. 460, at 7. It is true that there is "considerable reluctance on the part of the courts to allow intervention after an action has gone to judgment." 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1916 (3d ed.). This reluctance is based on "'the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court.'" *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970)). However, these concerns are mitigated where, as here, the "post-judgment intervention does not seek to disturb the core judgment." *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992). Accordingly, the post-judgment posture of LFR's intervention presents no problems of timeliness or prejudice.

the creditor be given notice before the firm change its name or structure. *See id.* at 16. LFR alleges that at some point in 2009, the Matthews Law Firm quit doing business under its name and started doing business under the name Matthews & Fullmer. *See, e.g., id.* at 60 (copy of the Matthews & Fullmer website showing a copyright date of 2009). It is around this time that Matthews & Fullmer contracted with Plaintiffs. Importantly, LFR has produced evidence suggesting that *Matthews & Fullmer* continued to make draws on the credit line, though it did so without notifying the creditor of its name change. LFR has also produced emails showing that Fullmer—Matthews & Fullmer's only principal other than Matthews—was knowledgeable of these draws, which were requested by Matthews in the name of "our" firm in emails copied to Fullmer. *See, e.g., id.* at 94–95 (email sent by Matthews to the loan servicer, on which Fullmer is copied, asking about the loan's status). And on November 10, 2009, Deborah Harshaw, whose email signature block had previously identified her as the bookkeeper for the Matthews Law Firm, also identified her as the bookkeeper for Matthews & Fullmer, located at the same address and phone numbers. *See id.* at 99–100. It was not until after LFR obtained a judgment in New

York that Matthews & Fullmer was incorporated in Texas.[6]

On these facts, LFR alleges that Matthew & Fullmer should be responsible for the Matthews Law Firm's debts because it either (1) "committed fraud against the Lender in 2009 when it took money knowing that it had replaced" the Matthews Law Firm, or (2) "it is attempting to commit fraud upon the Court by claiming that it is not [the Matthew Law Firm's] successor firm." Docket No. 479, at 6. I understand LFR to be making, in effect, two arguments: first, that Matthews & Fullmer is an alter ego of the Matthews Law Firm; and second, that Matthews & Fullmer is a mere continuation of the Matthews Law Firm. LFR's brief focuses principally on the latter argument, and as such so does Matthews & Fullmer's. And as to this question, Matthews & Fullmer suggests that the fact—which is asserted without evidence—that the Matthews Law Firm continues to function absolutely bars Matthews & Fullmer from being held liable as its successor. *See* Docket No. 480, at

---

6. The record does not make it clear, but before this date Matthews & Fullmer presumably operated as a general partnership. *See* TEX. BUS. ORG. CODE § 152.051; *see also Ingram v. Deere*, 288 S.W.2d 886, 894–95 (Tex. 2009). It is less clear what happened to the partnership when Matthews & Fullmer incorporated, and, accordingly, it is not clear to what extent the corporation assumed the obligations of the partnership.

| ALEJANDRO-ORTIZ v. PREPA | Page 12 |
|---|---|

9–11 (citing, *e.g.*, *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 195, 245 (N.Y. 1983) (holding that under New York law, "the predecessor corporation must be extinguished" in order for successor liability to apply).[7]

Even if the successor liability theory fails, however, LFR could prevail on an alter ego theory. Here, because the firms are organized in Texas, Texas law probably applies. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132–33 (2d Cir. 1993); *see also Goya Foods, Inc. v. Unanue*, 233 F.3d 38, 43 n.4 (1st Cir. 2000) (noting that an entity's state of incorporation "may well

---

7.  The Security Agreement entered into by the Matthews Law Firm and its creditor provides that New York law governs the agreement's interpretation as well as "all the rights and obligations arising" under the agreement. *See* Docket No. 479-2, at 20. For this reason, LFR assumes New York law governs the successor liability question, a point that Matthews & Fullmer do not dispute. But given that it is disputed whether Matthews & Fullmer is a party to the Security Agreement, I am not sure that New York law would apply. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (law governing in absence of effective choice by parties); *see also Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006) (Alito, J.) (discussing choice of law in the successor liability context). Going forward, the parties should stipulate to the law that should control or they should brief the matter (or show that the choice is irrelevant). I also note that when considering the successor liability doctrine's application here, it is a disputed fact whether the Matthews Law Firm continued to operate after the formation of Matthews & Fullmer.

supply the presumptively applicable legal regime for veil piercing claims" (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309)). Texas courts have identified several factors to be considered in determining whether one corporation is an alter ego for another: (1) "whether the entities shared a common business name, common offices, common employees, or centralized accounting"; (2) "whether one entity paid the wages of the other entity's employees"; (3) "whether one entity's employees rendered services on behalf of the other entity"; (4) "whether the allocation of profits and losses between the entities is unclear." *Tryco Enters., Inc. v. Robinson*, 390 S.W.2d 497, 509 (Tex. App.—Houston [1st Dist.] 2012). There is evidence in this case that the firms did share offices, employees, and perhaps accounting, satisfying at least the first and third factors.[8] As to the other two, the record before the Court is not sufficiently developed to make a determination.

Thus, while LFR's claim on the fees due Matthews & Fullmer is colorable, it is not established by the record cur-

---

8. Texas corporate law also permits disregarding a corporate fiction when "the fiction is used as a means of perpetrating fraud" or "where the corporate fiction is resorted to as a means of evading an existing legal obligation." *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.2d 444, 454 (Tex. 2009).

| ALEJANDRO-ORTIZ v. PREPA | Page 14 |
|---|---|

rently before the Court. As such, I understand that further proceedings on this question are necessary. In all likelihood, summary judgment or trial will be necessary to settle the question of the parties' entitlement to the funds currently held by the court. To that end, Matthews & Fullmer shall answer the complaint in intervention. The parties are granted until December 1, 2014, to conduct discovery, and dispositive motions are due by January 5, 2015.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of August, 2014.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES MAGISTRATE JUDGE